# Steiner Bros. *v.* Clisby.

*Bill in Equity for Foreclosure of Mortgage, and to Declare Priority of Liens; Cross-Bills.*

1. *Recital in note that it was given for purchase-money of land.*—When a promissory note was in fact given for money borrowed to make a cash payment on a purchase of land, a vendor's lien is not created by a recital therein that it was given for the purchase-money of the land.

2. *Unrecorded mortgage; validity as against subsequent mortgages, purchasers, and judgment-creditors*—Under statutory provisions (Code, §§ 1810-11), a mortgage of real estate, given to secure an antecedent debt, is inoperative and void as against subsequent purchasers for value, mortgagees, and judgment-creditors, without notice, unless recorded before the accrual of their respective rights; and the fact that it is filed for record at the same time with a subsequent mortgage, does not give it any preference over the latter.

3. *Same; proof of notice.*—When the holder of a prior unrecorded mortgage seeks to foreclose and enforce his lien against subsequent mortgagees, the *onus* is on him to prove that they had notice of it, actual or constructive, before their rights accrued; and if the second mortgage was given to secure three separate and independent debts, due to three different persons, the fact that one of them had knowledge of the prior mortgage does not charge the others with constructive notice of it.

APPEAL from the City Court of Birmingham, in equity.

Heard before the Hon. H. A. SHARPE.

The original bill in this case was filed on the 6th of September, 1889, by Steiner Bros., suing as partners, against

A. A. Clisby, Lorenzo Clisby and wife, Robert Jemison, and W. R. Deloach; and sought to foreclose a mortgage on certain real estate in Birmingham, and to declare and enforce the complainant's equitable rights in and to the property, as paramount and superior to the rights asserted by A. A. Clisby, Jemison, and Deloach. The mortgage, a copy of which was made an exhibit to the bill, was dated July 23d, 1888, and was executed by said L. Clisby to A. A. Clisby, to secure the payment of a promissory note for $5,000, which was dated April 25th, 1887, payable one day after date, at the First National Bank of Birmingham, to the order of A. A. Clisby, and recited that it was given for the purchase-money of the lots described in the mortgage. This note and mortgage were transferred and assigned by A. A. Clisby, February 19th, 1889, on the recited consideration of $5,000 in hand paid, to M. L. & C. Ernst, who, on the 4th September, 1889, for value received as recited, transferred the same to complainants. The complainants sought to foreclose the mortgage as assignees, and also seem to have asserted a vendor's lien on the land for purchase-money unpaid, under the facts stated in the opinion of the court. Jemison, Deloach and A. A. Clisby each asserted liens on the land under another mortgage, executed to them by said L. Clisby, which was given to secure the payment of his three notes, one payable to each of them respectively; which mortgage was dated September 26th, 1888. Jemison claimed a priority over the complainants, and asserted his rights by cross-bill, as well as in his answer to the original bill; while Deloach asserted his in his answer to the original bill, and also in his answer to Jemison's cross-bill, and claimed at least equal preference with Jemison over complainants. The facts out of which these several claims and liens arose are fully stated in the opinion of the court, and it is unnecessary to repeat them. On final hearing, on pleadings and proof, the City Court ordered the mortgaged property to be sold, and directed that the proceeds of sale, after payment of costs, be first applied to the claims of Jemison and Deloach, and secondly to the claim of Steiner Bros. The complainants appeal from this decree, and here assign it as error.

WHITE & HOWZE, and WATTS & SON, for appellants.

JNO. S. JEMISON, and W. R. HOUGHTON, *contra.*

CLOPTON, J.—On November 15, 1886, the Birmingham Land & Loan Company sold to Deloach and Cobbs the land in the bill mentioned, for eleven thousand dollars, one third of which was paid in cash, and notes for the deferred payments executed by them; the company giving a bond conditioned to make title on payment of the purchase-money. On January 20, 1887, Deloach and Cobbs sold the land to Cheatham and L. Clisby, for fifteen thousand dollars, one third to be paid in cash, the balance in one and two years, with interest. By arrangement between the parties, Cheatham and Clisby gave two notes to the Birmingham Land & Loan Company, for the amount of the purchase-money, with interest, owing by Deloach and Cobbs, and notes to Deloach and Cobbs respectively, for the excess of the fifteen thousand dollars agreed to be paid by them. Deloach and Cobbs surrendered to the company the bond for title held by them, and the company executed to them a bond conditioned to make title to them. In order to make the cash payment, L. Clisby borrowed from A. A. Clisby five thousand dollars, for which he gave his note dated April 25, 1887, payable one year after date, at the First National Bank of Birmingham. To secure this note, and in consideration of the extension of payment for twelve months, L. Clisby signed and delivered to A. A. Clisby a mortgage on the land. This mortgage, which bears date July 23, 1888, was not, at the time of delivery, attested or acknowledged, as required by statute. In consequence thereof, it was returned to L. Clisby, and acknowledged by him before a justice of peace, who appended thereto his official certificate of acknowledgment, September 28, 1888, and then returned it to A. A. Clisby. Cheatham transferred his interest to L. Clisby, in consideration of his assuming to pay the notes given by them for the purchase-money.

Jemison, having purchased from the Birmingham Land & Loan Company the notes of Cheatham and Clisby, and A. A. Clisby having acquired the note given to Cobbs, by agreement of all the parties L. Clisby executed to Jemison, Deloach and A. A. Clisby, respectively, notes in substitution and renewal of the notes of Cheatham and Clisby held by them; and to secure the same, and in consideration of the extension of the indebtedness, executed a mortgage on the land, at which time the Birmingham Land & Loan Company executed to L. Clisby a deed to the property. Though the notes, mortgage and deed bear date September 26, 1888, they were not in fact delivered until the 9th day of October. On October 11, 1888, A. A. Clisby filed the

mortgage of L. Clisby to him, and the mortgage to Jemison, Deloach and Clisby, in the office of the judge of probate of Jefferson county for registration. On February 18, 1889, A. A. Clisby transferred, and assigned without recourse for value, the note for five thousand dollars, and the mortgage to secure the same, to M. L. and C. Ernst, who transferred and assigned them thereafter to Steiner Bros. For the foreclosure of this mortgage, Steiner Bros. filed the present bill. L. Clisby, Deloach and A. A. Clisby and Jemison are made defendants. Jemison and Deloach filed separate cross-bills.

Though the note for five thousand dollars recites that it was given for the purchase-money of the land, this is untrue ; it was given for money borrowed to make the cash payment for the land ; the recital does not create a lien on the land. Whether, by the transaction of September 26, 1888, Jemison and Deloach waived or abandoned the vendor's lien, or whether complainants had notice of such lien,—questions elaborately discussed by counsel,—it is unnecessary, in the view we take of the case, to decide. The inquiry is, which mortgage has priority of lien? We shall consider the question of the superiority of lien as if the mortgage under which complainants claim was legally executed on the day it bears date, and the mortgage under which Jemison and Deloach claim was not executed until October 9, 1888.

Section 1811 of the Code declares, that all conveyances of real property, mortgages, or deeds of trust to secure any debt, other than a debt created at the date thereof, are inoperative and void as to purchasers for a valuable consideration, mortgagees, and judgment-creditors, without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees and judgment-creditors. The statute, the purpose of which is the prevention of fraud, is imperative in its terms. The right of Jemison and Deloach accrued October 9, 1888 ; the prior mortgage was not recorded until the 11th day of October, two days thereafter. At the time of the accrual of their right, the prior mortgage was inoperative and void as to them, unless they had notice thereof.— *Wood v. Lake,* 62 Ala. 489. The fact that both mortgages were filed for record at the same time, does not change the effect of the statute of registration. It does not require the second mortgage to be recorded before the first is recorded, in order to preserve its preference. It simply declares the unrecorded prior mortgage inoperative and void as against

the subsequent mortgagees, when their mortgage is executed and received without notice of the first.—*Coster v. Bank of Georgia*, 24 Ala. 37. Neither does the fact that A. A. Clisby, one of the mortgagees in the second mortgage, knew of their prior mortgage, affect the rights of Jemison and Deloach. Their debts are separate and distinct—there is no community of interest in respect to them. The mere circumstance that the mortgage was executed to all three does not create a mutual agency, so that notice to one will affect the others.—*Snyder v. Sponable*, 1 Hill, 567; Wade on Notice, § 684

Conceding that M L. and C. Ernst and complainants had no notice of the mortgage to Jemison, Deloach and Clisby, at the time they respectively purchased the first mortgage, the absence of such notice does not impart validity and superiority, as against the subsequent mortgagees, to the prior mortgage, which is declared by the statute to be inoperative and void at the time they purchased it. On the undisputed facts, Jemison and Deloach are mortgagees entitled to protection under the statute against the lien of the mortgage under which complainants claim, if without notice thereof. There is no pretense, no effort to show, that Deloach had notice. A. A. Clisby testifies that he *believes* he told Jemison of the mortgage before the second mortgage was delivered. But notice thereof is positively denied by Jemison, who swears that Clisby did not tell him about it until after he had transferred the mortgage to M. L. and C. Ernst. The burden of proving notice rests on complainants. We find from the evidence that neither Jemison nor Deloach had notice of the prior mortgage, nor information of facts sufficient to put them on inquiry, at the time of the accrual of their right under the second mortgage.

The decree of the City Court, in accord with these views, is affirmed.

[On application for rehearing.]

COLEMAN, J.—The application for a rehearing has been carefully examined and considered. We can not consent to the contention that the debt of complainant was created at the date of the mortgage, so as to relieve it from the operation of section 1810 of the Code. True, the debt was extended, and the extension no doubt, as has been frequently held, constituted a valuable consideration. But the statute (sec. 1810) is imperative, and declares that . . . "mortgages, or instruments in the nature of a mortgage of real

[Garrett & Sons v. Jones.]

property, to secure any debt created at the date thereof, are void as to purchasers for a valuable consideration, mortgagees and judgment-creditors, having no notice thereof, unless recorded within thirty days from their date"; and section 1811 provides, "that all other conveyances, mortgages" &c., "to secure any debts other than those specified in the preceding section" [debt created at the date thereof], are inoperative and void, as to purchasers for a valuable consideration, mortgagees and judgment creditors, without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees, or judgment-creditors." The evidence shows that complainants' debt began in a loan of money, several months before the date or execution of the mortgage to secure it, and was not created at the date of the mortgage, but only extended at that time.

Complainant's own contention is, and the evidence sustains him in this respect, that Jemison was a subsequent mortgagee; and if he had no notice of the existence of complainant's mortgage, the prior mortgage not having been recorded in time, under section 1811 was inoperative against him. There is some foundation for the argument that Jemison had notice from Clisby of complainant's prior mortgage, but the facts are not sufficient to overcome the positive proof to the contrary.

The rehearing must be denied.