CRAIG *et al. v.* OSBORN *et al.*

[98 So. 598. No. 23608.]

(En Banc. Dec. 31, 1923. Suggestion of Error Overruled Feb. 4, 1924.)

VENDOR AND PURCHASER. *Priority of conveyances as to subsequent purchasers for value without notice stated.*

By the terms of section 2288, Hemingway's Code (section 2784, Code 1906), a conveyance shall not be good against a purchaser for valuable consideration without notice, or any creditor, unless it is acknowledged or proven and lodged with the clerk to be recorded. A deed not filed for record is void as to a subsequent purchaser or creditor for value without notice, even though the holder of such unrecorded deed has it filed after the subsequent conveyance is executed and before it is recorded. Under section 2292, Hemingway's Code (section 2788, Code 1906), the instrument takes effect, as to subsequent purchasers and creditors for value without notice only from the time when delivered to be recorded, and does not relate back to its date in being filed, so far as subsequent purchasers and creditors for value are concerned. The statute does not give preference in the order of filing, and as to such subsequent purchasers or creditors it is not material whether the subsequent deed or lien be filed or recorded or not.

SYKES and COOK, JJ., dissenting.

APPEAL from chancery court of Leflore county.
HON. C. L. LOMAX, Chancellor.

Suit by W. L. Craig and another, trustees, against S. I. Osborn, trustee, and another. From a judgment

sustaining a demurrer to the bill, plaintiff appeals. Reversed and remanded.

*Pollard & Hamner,* for appellants.

This appeal grows out of the construction of the Recording Act by the chancellor. Harry Hosmer executed a deed of trust to G. P. Elliott. Elliott withheld it from the record from the 10th day of January, 1918, until the 9th day of June, 1919. On the second day of June, 1919, without any knowledge of the outstanding deed of trust from the said Harry Hosmer to G. P. Elliott, and before Elliott's deed of trust was recorded, W. L. Craig loaned to the said Harry Hosmer one thousand five hundred dollars in money, on the same security which was held by Elliott. Elliott's deed of trust was filed for record on the 9th day of June, and Craig's deed of trust was filed for record on the 13th day of June.

The chancellor held that in order to occupy the position of a *bona-fide* purchaser for value without notice, Craig was required under the law to get his deed of trust on record first. We contend that the chancellor erred in thus construing the law. The practice of recording conveyances was unknown to the common law, and, therefore, as between conflicting conveyances from the same source, the one which was prior in time was prior in right. At an early date, however, to obviate fraud arising out of secret conveyances, statutes were enacted in the several jurisdictions requiring the registration of conveyances in order to render them valid as against subsequent *bona-fide* purchasers. The language of these statutes varies to such an extent that it is necessary to keep in mind the provision of the particular statute in order to catch the reasoning in a particular case.

We have found the most complete annotation which
it has been our privilege to examine in the note to *Mc-
Gregor* v. *Putney,* 75 N. H. 113, 71 Atl. 226, in Am.
Anno. Cases 1912-A 193.

There are three sections in the Mississippi Code per-
taining to the recordation of instruments: Section
2288 (2784), Hemingway's Code; Section 2291 (2787),
Hemingway's Code; Section 2292 (2788), Hemingway's
Code. Neither of these sections of the Code provides
or requires that the subsequent purchaser for a valu-
able consideration without notice shall record his con-
veyance in order to give it effect against a prior con-
veyance of which he had no notice, actual or construc-
tive. Our contention is that a subsequent purchaser
for a valuable consideration without notice does not
have to get his conveyance on record in order to be
protected against a prior unrecorded deed of trust of
which he had no knowledge or means of knowledge.

Our contention is that Elliott's deed of trust did not
take effect as to Craig until it was lodged with the
clerk on the 9th day of June, 1919, and that before
Elliott's deed of trust took effect Craig had already, in
good faith, paid out his money on a subsequent mort-
gage, and that it was not necessary for Craig to file
his deed of trust in order to be a *bona-fide* purchaser for
value, without notice, and entitled to protection as
against Elliott's unrecorded deed of trust.

It has been universally held by the supreme court of
a number of our sister states that unless the statute
required a subsequent encumbrancer to first file his
deed of trust it was not necessary for him to do so in
order to be protected by the statute. *Steiner* v. *Clisby,*
95 Ala. 91, 10 So. 240, and 11 So. 294; *Coaster* v. *Georgia
Bank,* 24 Ala. 37; *Brown* v. *Nelms,* 6 Ark. 368, 112 S.
W. 373; *West Coast Lumber Company* v. *Griffin,* 56 Fla.
873, 48 So. 36; *McQuire* v. *Baker,* 61 Ga. 339; *Schaeffer*
v. *Fithian,* 17 Ind. 463; *Turpin* v. *Sudduth,* 53 S. C. 295;

*Ranney* v. *Hogan,* 1 Tex. Unrep. Cas. 253; *Swanstron* v. *Washington Trust Company,* 41 Wash., 561, 83 Pac. 112. (In this case the court quoted with approval from 24 Am. and Eng. Enc. of Law (2 Ed.), 140.) *Sallass* v. *Pierce,* 30 Wis. 443.

Our statute is silent concerning the recording of the later instrument. The prior instrument is void until filed, and takes effect from the date of filing. The exact point involved in this case has not been passed on by our court, but our court has, however, announced plainly the protection given to a creditor as against the holder of a prior conveyance which has not yet been recorded, and we can see no real difference between the position of a *bona-fide* purchaser for value, without notice, and that of a creditor. *Claiborne* v. *Holmes,* 51 Miss. 146; *Humphrey* v. *Merrill,* 52 Miss. 92; *Myers* v. *Buchanan,* 46 Miss. 406; *Duke* v. *Clark,* 58 Miss. 465; *Miss. Val. Co.* v. *Chicago, etc., R. Co.,* 58 Miss. 846; *Louridge & Bogan* v. *Jno. Rowland,* 52 Miss. 546.

The case of *Leonard Pomet* v. *A. Scranton et al.,* reported in Walker's Reports, 406, is practically the same proposition as presented to the court in the present case. See, also, 23 R. C. L. 232; 27 Cyc., 1214. Craig occupies the position of a purchaser, and if he did not occupy that position the trustee in the deed of trust securing his indebtedness is joined herein as one of the complainants, and in the prayer for general relief.

Recording an instrument does not cut off the equities as between the parties. The thing that governs the equities is notice. Craig had no notice. Our statute does not require the subsequent mortgagee or lienholder to first record his security before he is entitled to its protection, and we do not believe that the court will engraft such a provision on the statute.

*Osborn & Witty,* for appellees.

So far as we have been able to ascertain, appellant's counsel is the first in this state to contend that a junior mortgage should have priority over a senior mortgage first recorded. There are many reported cases in which a junior mortgage has been held to have priority over another mortgage bearing prior date, and filed for record subsequent to the recordation of the junior mortgage. In those cases the holder of the senior mortgage so far as date is concerned, has contended that he should be accorded priority even though a junior mortgage was first filed for record. Of course the courts have held uniformly in such cases that the junior mortgage had priority because it was first filed for record.

The cases relied upon by appellant are not in point since each rests on the statute of its particular state. We submit that none of the Mississippi cases relied upon by appellant have any bearing whatever, because the facts are in no way similar to the facts in the case at bar. In all the Mississippi cases cited, the statement frequently occurs that the filing of the deed after the rendition of the judgment, or after the attachment had been executed on the land did not have the effect of giving the deed priority. In other words, it had no relation back, but the deed took effect only from the time it was filed for record as against these liens previously acquired and of record at the time the deed was filed for record. Instead of being authorities for appellant we think these cases are authorities for appellee.

A most careful examination of all the cases from the courts of other states discloses only one court which apparently holds squarely with the contention of appellant. These cases come from the state of Washington. On the other hand there are numbers of cases from other courts which place the same construction upon statutes similar to ours as that contended for by appellee. The Illinois statute is practically identical with our own, and was construed by the supreme court of

Illinois in *West Chicago Street Railway Co.* v. *Morrison* (Ill.), 43 N. E. 393.

The Tennessee court, in construing a statute identical with our own, has on several occasions held that the only way a subsequent purchaser can have priority as against a deed bearing prior date, in the absence of actual notice, is to first file his instrument for record. See *Copeland & Park* v. *Bennett & Park,* 10 Yerger, 355; *Whiteside* v. *Watkins,* 58 S. W. 1107. In the recent case of *McHan* v. *Dorsey,* 92 S. E. 598, the North Carolina court had its statute under consideration.

The textwriters are in accord. 1 Jones on Mortgages, 674; 27 Cyc. 1192 to 1194, inclusive; 19 R. C. L. 408.

If appellant should prevail in his construction of our Registry Act, greatest confusion and disorder will immediately follow. Business will be injuriously affected to an extent disagreeable to contemplate. If appellant prevails the Recording Statute means nothing. We contend that a man becomes a subsequent purchaser for value, within the meaning of the statute only when he files his instrument for record. We argue that the registry law should mean something to a man when he examines the records, finds them clear, and files his instrument for record; that the risk he runs in having a lien to some other party put of record before he gets his of record is quite enough of a burden to put on him; but when he does get his instrument of record without notice of any other outstanding unrecorded instrument, he ought to be entitled to a consciousness that he has done all the law requires of him, and is entitled to its protection.

Argued orally by *R. V. Pollard,* for appellants, and *S. I. Osborn,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

The appellants filed a bill in the chancery court, alleging that S. I. Osborn, as substituted trustee, foreclosed a deed of trust executed by one Harry Hosmer to secure an indebtedness due to L. G. Malone, which deed of trust embraced two hundred acres of land and was duly recorded, and at the said sale the land sold for four thousand two hundred fifty dollars cash.

It further alleged that, subsequent to the execution of the aforementioned deed of trust, the said Hosmer executed two deeds of trust on the said land—one to G. P. Elliott on the 10th day of January, 1918, to secure a note for four thousand dollars, which remains unpaid, and which deed of trust was withheld from the record from the 10th day of January, 1918, until the 9th day of June, 1919, and until seven days after the complainant had paid out the sum of one thousand five hundred dollars to the said Hosmer and had taken a deed of trust on the said land to secure the same. It was alleged that the complainant was without any knowledge whatever of the outstanding unrecorded deed in favor of Elliott, and that the complainant recorded his deed of trust on the 13th day of June, 1919.

The complainant alleged that the amount due Malone under his deed of trust was two thousand seven hundred thirty-nine dollars and ten cents, and that there remained in the hands of Osborn, trustee, the sum of one thousand five hundred ten dollars and ninety cents from the proceeds of the said sale of land.

It further alleged that on the 2d day of June, 1919, the said Osborn conveyed all his interest in the said tract of land by a deed of trust duly executed, etc., and that the complainant was a *bona-fide* incumbrancer for value without notice, either actual or constructive of the outstanding claim of Elliott, and that he is entitled to the said proceeds in the hands of the said trustee to first satisfy complainant in trust; but that the said trustee refuses to pay the complainant or to recognize his

prior right, and prays for a decree directing the said trustee to turn over to the complainants sufficient money to satisfy the complainant's incumbrances.

The bill was demurred to, and the demurrer sustained, and an appeal taken, which appeal presents for decision the questions of priority between Craig, the appellant, and Elliott, the appellee.

The decision turns upon the construction of sections 2288, 2291, and 2292, Hemingway's Code (sections 2784, 2787, and 2788, Code 1906), which read as follows:

"2288. A conveyanve of land shall not be good against a purchaser for a valuable consideration without notice, or any creditor, unless it be acknowledged by the party who executed it, or be proved by one or more of the subscribing witnesses to it that such party signed and delivered the same as his or her voluntary act before some officer authorized to take such acknowledgment or proof; and a certificate of such acknowledgment or proof shall be written upon or under the conveyance, and be signed by the officer before whom it was made, and be lodged with the clerk of the chancery court of the county in which the lands are situated, to be there recorded."

"2291. All bargains and sales, and all other conveyances whatsoever of lands, whether made for passing an estate of freehold or inheritance, or for a term of years; and all instruments of settlement upon marriage wherein land, money, or other personalty should be settled or covenanted to be left or paid at the death of the party, or otherwise; and all deeds of trust and mortgages whatsoever, shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they be acknowledged or proved and lodged with the clerk of the chancery court of the proper county, to be recorded in the same manner that other conveyances are required to be acknowledged or proved and recorded; but the same as between the parties and their heirs, and as to all subsequent purchasers with notice or without

valuable consideration, shall nevertheless be valid and binding.

"2292. Every conveyance, covenant, agreement, bond, mortgage, and deed of trust shall take effect, as to all subsequent purchasers for a valuable consideration without notice, and as to all creditors, only from the time when delivered to the clerk to be recorded."

By the terms of section 2288, Hemingway's Code (section 2784, Code 1906), a conveyance shall not be good against a purchaser for valuable consideration without notice,' or any creditor, unless it is acknowledged or proven, as provided in the act, and be lodged with the clerk of the chancery court of the county in which the lands are situated to be there recorded. It seems plain that the act makes the conveyance void as to a deed or lien secured between the execution of the deed and the date it is filed for record. Nothing is said in the section about any duty of the subsequent *bona-fide* purchaser or incumbrancer filing his deed for record. A deed is void only as to the persons named therein, who acquire their rights subsequent to the execution of the deed in good faith for value without notice and the date that such deed is filed for record. As to such parties the deed under such circumstances is void.

By section 2292, Hemingway's Code (section 2788, Code 1906), above set out, the instrument takes effect as to subsequent purchasers for value without notice and to creditors only from the time when delivered to the clerk to be recorded. Under this section as to such persons the deed or mortgage or other lien has no legal existence until it is filed for record.

It is contended by the appellee, and so held by the court below, that the statute meant that it would not be good against a subsequent purchaser or incumbrancer or creditor who had filed his deed or lien for record, and that the subsequent purchaser intended by the statute was one who had his conveyance first recorded. To so

interpret the statute in our opinion would be to write
into it words and terms which the legislature has not
written. And it seems plain to us that the thing that
the legislature intended to accomplish was the protec-
tion of the person buying or securing a lien in good faith
without notice. It would have been an easy matter to
have drawn the statute simply to provide that priorities
would be governed by the date of the recording or filing
of the several instruments.

This question has not been precisely decided in this
state and there is some conflict in the decisions of other
states. But in our view the line of decisions holding as
above indicated are the sounder and better view, and
better serves the general purpose of the recording acts.

In *Coster's Ex'rs* v. *Bank of Georgia et al.*, 24 Ala. 37
*et seq.*, the Alabama court reached a similar conclusion
upon a similar statute. At page 61 of the report, the
court said:

"The question then arises, What is the effect of our
acts of registration upon the two instruments by which
Hope & Co. and the Bank of Georgia claim and how do
the said acts affect the one in reference to the other?

"If we apply to them the act of 1823 (Clay's Digest
154, section 18), we shall see that the penalty of nullity
is pronounced upon the mortgage of the bank, so far as
respects Hope & Co. and Carl Heine. The language of
the act is that, as against 'a subsequent *bona-fide* pur-
chaser, or a mortgagee for a valuable consideration, not
having notice thereof,' such deed or conveyance shall be
void and of no effect. That Hope & Co. are mortgagees,
is undoubted. Their claim is based upon the technical
bond and mortgage. This act of 1823 makes no require-
ment of the subsequent mortgagee, that he must record
his mortgage, or stand in the same predicament as the
first mortgagee with his unregistered mortgage. The
act simply declares the first unrecorded deed void, as
against the subsequent mortgagee, *bona fide,* and upon

valuable consideration, where such mortgage is contract-
ed without notice of the prior incumbrance.  Suppose,
then, the case of two mortgages of real estate, both regu-
lar upon their face, but neither recorded, and that the
last has been contracted in ignorance of the existence
of the first.  Can there be any doubt that the last mort-
gage would override the first?  We consider it plain that
it would.  The second mortgagee, in not recording his
mortgage, runs the risk simply of being overridden by
some subsequent mortgagee or incumbrancer, and in that
case the statute would declare the nullity of his mort-
gage, and prefer the subsequent one, as it prefers his to
the previous one.  A different rule would prevail, if the
statute gave the preference to the mortgage first re-
corded; but that is not so, nor does the act require the
second mortgage to be recorded at all, but it pronounces
the second mortgage, on its execution and delivery, if
executed and received in ignorance of the first mortgage,
its superior.  And we apprehend the result will be the
same, if we apply to these instruments the act of 1828,
which speaks of deeds of trust of personal property to
secure debts.  Under this act, a deed not recorded for
thirty days, if of personal property, and for sixty days
if of real estate, is pronounced void, as against creditors
and subsequent purchasers without notice.  Applying
this act to the two deeds under which the parties claim,
we cannot perceive any difference in the result.  Hope
& Co., it is conceived, are, under their mortgages, cred-
itors, if not subsequent purchasers; and the nullity of
the bank mortgage, as to them, is as distinctly declared
under this act as under the act of 1823, where we are dis-
posed to think the deeds legitimately fall.  The vice of
the argument of the counsel in favor of the Bank of
Georgia, consists in supposing that, the latter mortgage
remaining unrecorded, the mortgages in that respect
stand on the same level.  Whereas the truth is that the
act itself, whether we apply to them the act of 1823 or

the act of 1828, makes the first mortgage null and void so far as the second is concerned, and neither act imposes upon the second mortgage the necessity of being registered in order to give it priority over the first.''

In the subsequent case of *Steiner* v. *Clisby,* 95 Ala. 91, 10 So. 240, and on suggestion of error at 11 So. 294, the court construing the latter statute reached substantially the same conclusion. In that case it was held that, as between subsequent mortgagees, where the senior mortgage was not recorded at the time the junior mortgage was executed, the junior was entitled to priority if a *bona-fide* purchaser, though both mortgages were filed at the same time. The court said:

''The fact that both mortgages were filed for record at the same time does not change the effect of the statute of registration. It does not require the second mortgage to be recorded before the first is recorded, in order to preserve its preference. It simply declares the unrecorded prior mortgage inoperative and void as against the subsequent mortgagees, when their mortgage is executed and received without notice of the first.''

In *Feinberg* v. *Stearns,* 56 Fla. 279, 47 So. 797, 131 Am. St. Rep. 119, the Florida court held in accordance with the above views. At page 279 of 56 Fla. at page 798 of 47 So. (131 Am. St. Rep. 119) the court said:

''The law is well settled that under our recording laws subsequent purchasers and creditors acquiring subsequent liens by judgment or otherwise without notice of a prior unrecorded deed will be protected against such unrecorded conveyance, unless the party claiming thereunder can show that such subsequent purchaser or creditor acquired his title or lien with notice of such unrecorded conveyance, and the burden of showing such notice is upon the party claiming under such unrecorded conveyance. All of the presumptions in such a case are in favor of the *bona fides* of such subsequent purchaser or lien creditor, and that they acquired their subsequent

title or lien in good faith and without notice of the prior unrecorded conveyance, and the burden is on the party who has neglected to record his prior title to show that the subsequent purchaser or lien creditor has acted in fraud of his rights by purchasing or acquiring his lien with notice of his unrecorded prior conveyance.''

The instruments considered by the Florida court in this case were as follows: On the 6th day of November, 1902, one R. H. Plant recovered a judgment against J. W. Mitchell, who was then, so far as the public records showed, the owner of the lots in dispute. Under the execution issued for the enforcement of this judgment, the two lots in dispute were levied upon by the sheriff and sold at public sale on the 7th day of December, 1903, and Feinberg became the purchaser thereof at said sale and took a deed from the sheriff to the said lots. He had, prior to the sale, become the assignee of the judgment for a valuable consideration. The defendant Stearns claimed title under a deed from the judgment defendant Mitchell, dated the 17th day of September, 1902, It will be noted that his deed was given prior to the rendition of the judgment, but it was not put of record until the 4th day of November, 1903. This case is directly in point.

A similar announcement was made in the subsequent case of *West Coast Lbr. Co.* v. *Griffin,* 56 Fla. 878, 48 So. 36.

In an early case from Indiana a statute of that state was construed which provided:

''Every conveyance or mortgage of lands, or of any interest therein, and every lease for more than three years, shall be recorded in the recorder's office of the county where such lands shall be situated; and every such conveyance or lease not so recorded within ninety days from the execution thereof, shall be fraudulent and void as against any subsequent purchaser or mortgagee in good faith for a valuable consideration.'' 1 Rev. St. 1852, p. 234, section 16.

It was held in *Schaffer* v. *Fithian,* 17 Ind. 463, a junior conveyance took precedence over a senior one and that it was immaterial whether the junior conveyance was ever recorded or not.

In Missouri the statute provided that conveyances, etc., be recorded, and that no such instrument—"shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder." Rev. St. 1889, section 2420.

In *Miller* v. *Merine* (C. C.), 43 Fed. 261, it was held that, as between two unrecorded conveyances, the junior grantee, if a *bona-fide* purchaser, was entitled to priority, under this statute, and that it was immaterial that after his purchase the prior conveyance was first recorded.

In Texas a statute (Paschal's Dig. art. 4988) provided in general terms that conveyances shall be void as to subsequent *bona-fide* purchasers unless they shall be filed for record as required by the statute. Under this statute it was held that the title of a subsequent *bona-fide* purchaser is superior to that of the senior grantee, whose conveyance is unrecorded at the time the junior conveyance is executed, though the senior conveyance is thereafter first recorded. *Ranney* v. *Hogan,* 1 Posey, Unrep. Cas. 253.

In the state of Washington the statute provides: "All deeds, mortgages and assignments of mortgages, shall be recorded in the office of the county auditor of the county where the land is situated, and shall be valid as against *bona-fide* purchasers from the date of their filing for record in said office; and when so filed shall be notice to all the world." Ballinger's Ann. Codes & St. section 4535.

Construing this statute, the courts of that state held that it is not necessary that the subsequent conveyance be first recorded in order to gain priority. *Swanstron* v. *Washington Trust Co.,* 41 Wash. 561, 83 Pac. 1112.

The appellee relies upon cases from Illinois (*West Chicago St. Ry. Co.* v. *Morrison,* 160 Ill. 288, 43 N. E., 393; *Stevens* v. *Shannahan,* 160 Ill. 330, 43 N. E. 350), construing the Illinois statute, which reads:

"All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record." Hurd's Rev. St. 1893, chapter 30, section 30.

The court in the above cases construing this statute held that, when the prior mortgage was recorded subsequent to the execution of the second, it would take precedence unless the second was recorded first.

It is contended that this statute is practically the same as our own. But we think the last clause above quoted, "until the same shall be filed for record," taken with the context of the statute, is different from our own, which provides that it "shall take effect only from the filing of the record." The words, "until the same shall be filed for record," carries with it the idea that when it is filed for record it takes precedence over all intermediate conveyances not filed for record.

Appellee also relies on the case of *Copeland* v. *Bennet,* 10 Yerg. (Tenn.) 355; and *Whiteside* v. *Watkins* (Tenn. Ch. App.), 58 S. W. 1107; *Penrose* v. *Doherty,* 70 Ark. 256, 67 S. W. 398; *Murray* v. *Satterfield,* 125 Ark. 85, 187 S. W. 928; and *McHan* v. *Dorsey,* 173 N. C. 694, 92 S. E. 598; and *Collins* v. *Aaron,* 162 Pa. 539, 29 Atl. 724. The Tennessee and Pennsylvania cases sustain the contention of the appellee.

In Arkansas the court seems to have held two ways: In *Brown* v. *Nelms,* 86 Ark. 368, 112 S. W. 373, the court held that, where a mortgage was not recorded until

after a deed of the same premises had been executed, the deed took precedence over the mortgage, although the latter was first executed. In *Penrose* v. *Doherty,* 70 Ark. 256, 67 S. W. 398, the two deeds filed for record in that case were filed the same day, and the court held that the first in time under that condition would prevail. And the court held, under the same conditions, where both deeds were filed the same day, the one first given would take priority, in *Glassock* v. *Mallory,* 139 Ark. 83, 213 S. W. 8.

In the case of *McHan* v. *Dorsey,* 173 N. C. 694, 92 S. E. 598, the statute was different in its language from our statute, in that it provided that such conveyance would not be valid unless registered, but provided priority from registration. The Tennessee statute (Shannon's Code, section 3749) is slightly different in that it uses the words "as to other persons."

A summary of the different holdings of the different states and of the substance of their statutes will be found in case note to *McGregor* v. *Putney,* Ann. Cas. 1912A, p. 194.

After a careful consideration of our statutes on registration and their purpose and all the authorities referred to us, we have reached the conclusion stated in the beginning of this opinion, and the judgment will be reversed, the demurrer overruled, and the cause remanded, with leave to plead or answer within thirty days from date of mandate to the court below.

*Reversed and remanded.*

SYKES and COOK, JJ., dissent.