## WACHOVIA BANK & TRUST COMPANY v. WAYNE FINANCE COMPANY.

(Filed 4 November, 1964.)

1. **Chattel Mortgages and Conditional Sales § 12;    Registration § 4—**

Where a mortgagor is permitted to retain possession of the chattel, the mortgagee acquires no lien as against purchasers or lien creditors but from the registration of the chattel mortgage.

2. **Same;    Automobiles § 4—**

G.S. 20-28(a) does not prevent a mortgagee having actual possession of the pledged vehicle from acquiring a lien having priority over other liens not then perfected, and therefore a mortgagee who has his lien first recorded and who retains possession of the vehicle mortgaged has a lien prior to a mortgagee subsequently recording his instrument who does not transmit the certificate of title to the Department of Motor Vehicles within ten days of the date of its loan and mortgage.

3. **Estoppel § 4—**

Estoppel is not available to protect one against his own negligence, and where a chattel mortgagee of automobiles would have had priority of lien,

if it had transmitted the certificates of title to the Department of Motor Vehicles within ten days of its mortgage, but fails to do so, it may not assert estoppel as against a prior registered lien on the ground that the certificates of title failed to show the existence of any liens.

**4. Marshalling—**

A creditor cannot assert the remedy of marshalling of assets as against another creditor on the ground that a third person had guaranteed payment of such other creditor's debt when the guarantor of payment would be subrogated to the rights of such other creditor.

APPEAL by defendant from *Clark (Edward B.), S. J.,* May 1964 Session of WAYNE.

This action was instituted to determine who is entitled to the proceeds derived from the sale of 12 automobiles described in mortgages given by John Long Motor Sales (Long) to plaintiff and to defendant. Long is a limited partnership engaged in buying and selling new and used automobiles in Wayne County. John Long is the general partner. He operates the business. John C. Cobb is the limited partner.

In March 1961, plaintiff agreed that it would make loans to Long to purchase automobiles. Each loan was to be evidenced by a note. Payment was to be secured by chattel mortgage on the vehicle for which the loan was to be made. Cobb, the limited partner, guaranteed payment of the loans.

In April and May 1963, plaintiff, pursuant to its agreement with Long, made twelve loans aggregating $10,660.00. Payment of these loans was secured by chattel mortgages on 12 second hand automobiles. These twelve mortgages were not filed for record until 4:20 p.m. on June 19, 1963. Plaintiff then took possession of the automobiles. The liens of the mortgages were not noted on the certificates of title issued for the vehicles.

In July 1962, defendant agreed to make loans to Long to enable him to purchase automobiles. Plaintiff did not know of Long's arrangement with defendant.

In April, May and June 1963, defendant made loans aggregating $9,-050.00 to Long. The loans made by defendant were from one to eight days subsequent to the loans made by plaintiff. A chattel mortgage on each of the 12 automobiles was given to defendant on the same day the loan was made. These mortgages, the earliest dated April 9, 1963, the latest dated June 1, 1963, were not filed for record until 12:10 p.m. on June 20, 1963, twenty hours after plaintiff's mortgages were recorded and it had taken physical possession of the automobiles.

Long had possession of the vehicles and the certificates of title therefor when plaintiff made its loans. It examined, but did not retain pos-

session of the certificates of title. The certificates did not indicate that the vehicles were subject to any liens.

Defendant, before making its loans to Long, examined each of the vehicles, which were then in Long's possession, and examined and took possession of the certificates of title covering each of the vehicles. It did not transmit the certificates to the Department of Motor Vehicles to have its liens noted thereon. There was nothing on any certificate to indicate that any vehicle was subject to a lien. Defendant retained possession of the certificates of title until July 19, 1963, when it and plaintiff agreed that the vehicles would be sold and the rights of the parties transferred to the proceeds of sale.

The vehicles were sold in August 1963, for $6,987.14. This sum is insufficient to pay the debt due plaintiff secured by Long's mortgages to it, or the debt due defendant secured by Long's mortgages to it.

Based on the agreed facts, the court adjudged plaintiff was entitled to the proceeds of sale. Defendant excepted and appealed.

*Sasser & Duke for defendant appellant.*
*Taylor, Allen & Warren by John H. Kerr, III, for plaintiff appellee.*

RODMAN, J. G.S. 47-20 provides: "No * * * mortgage of * * * personal property * * * shall be valid to pass any property as against lien creditors or purchasers for a valuable consideration from the * * * mortgagor, but from the time of registration thereof * * *." This statute has been interpreted in multitudinous opinions. The conclusions reached are consistently to the effect that where a mortgagor is permitted to retain possession of chattels, the mortgagee acquires no lien as against purchasers or creditors, but from the registration of the instrument.

The word creditor, as used in the statute, does not mean a general creditor; it means a lien creditor — one who has a recorded mortgage, or has possession of the chattel for the purpose of securing mortgagor's debt. *Credit Co. v. Norwood,* 257 N.C. 87, 125 S.E. 2d 369; *Finance Corp. v. Hodges,* 230 N.C. 580, 55 S.E. 2d 201. Since plaintiff's mortgages were first recorded, and it had physical possession of the chattels when defendant filed its mortgages for record, it had, if the provisions of G.S. 47-20 were here controlling, a prior claim to the fund. *Fleming v. Burgin,* 37 N.C. 584; *Robinson v. Willoughby,* 70 N.C. 358; *Todd v. Outlaw,* 79 N.C. 235; *Hodges v. Wilkinson,* 111 N.C. 56, 15 S.E. 941; *Collins v. Davis,* 132 N.C. 106, 43 S.E. 579; *McHan v. Dorsey,* 173 N.C. 694, 92 S.E. 598; *Cowan v. Dale,* 189 N.C. 684, 128 S.E. 155; *Eaton v. Doub,* 190 N.C. 14, 128 S.E. 494; *Jordan v. Wetmur,* 202

N.C. 279, 162 S.E. 610; *Glass v. Shoe Co.*, 212 N.C. 70, 192 S.E. 899; *Finance Corp. v. Hodges, supra; Rubber Co. v. Crawford,* 253 N.C. 100, 116 S.E. 2d 491.

The Legislatures of 1923 and 1937 required the owner of a motor vehicle to register it, and to obtain a certificate of title showing all liens thereon, G.S. 20-52, G.S. 20-57. But these statutes did not repeal or modify our recording laws. Priority, where the mortgagor retained possession of the chattels, was determined by priority in filing for record in the proper office. *Corporation v. Motor Co.*, 190 N.C. 157, 129 S.E. 414.

The 1961 Legislature, by the enactment of Chapter 835 of that Session, revolutionized the laws of this State as they relate to chattel mortgages on property for which it is necessary to have a certificate of title.

It is not necessary and, in fact, unusual, for an act of the Legislature to carry a preamble explaining the reason for its enactment, but Chapter 835, S.L. 1961, does. It says that:

"WHEREAS, the present motor vehicle certificate of title law provides for a declaration of all existing liens at the time of application for registration, but does not require that liens given thereafter be declared and entered on the certificate of title; and

"WHEREAS, the certificate of title, often regarded as absolute, is not conclusive as to liens and may not be relied upon to show good title for purpose of sale or encumbrance, except as it relates to lien perfection under Section 213 of the Interstate Commerce Act; that is, liens on equipment of interstate common and contract carriers; and

"WHEREAS, the present certificate of title law does not meet the requisites of the Uniform Title Code because the certificate of title is not in and of itself adequate notice to third parties of existing liens; and

"WHEREAS, a certificate of title that can be relied upon as a ready means by which all legal interests in motor vehicles may be determined would be to the public interest."

This statute, effective January 1, 1962, G.S. 20-58.10, made important changes in our registration laws as they relate to automobiles. The place where the lien is to be recorded is changed from the office of the Register of Deeds to the Department of Motor Vehicles, G.S. 20-58.2. Now the lien, if the agreement to pay is filed with the Department within ten days from its date, relates back to the day the lien was created, G.S. 20-58(b). To that extent, the 1961 law adopts the philosophy of our earliest recording acts, sec. 1, c. 7, Laws of 1715, Potter's Revisal 104.

May a creditor, having actual possession of an automobile, acquire a valid lien without having the pledge noted on the certificate of title? By uniform interpretation, our recording statutes have been limited to those cases where the mortgagor retained possession of the chattel. They have no application when the creditor takes actual possession of the chattel which secures payment of the debt. *Doak v. Bank*, 28 N.C. 309; *Cowan v. Dale, supra; Bundy v. Credit Co.*, 202 N.C. 604, 163 S.E. 676; *Finance Corp. v. Hodges, supra; Rubber Co. v. Crawford, supra.*

No language of the 1961 statute expressly prohibits the creation of a pledge; nor does the reason given for the enactment lead one to conclude the Legislature intended to prevent the creation of a valid lien by delivering possession of the chattel to the creditor. People do not normally purchase or lend money on second hand automobiles merely upon the exhibition of the certificate of title. They want to see the vehicle itself. They neither purchase nor loan without such an examination. There is, we think, clear implication in G.S. 20-58(a) that the Legislature did not intend to prevent a mortgagee who has actual possession of the pledged vehicle from acquiring a lien having priority over liens not then perfected.

Neither party had a perfected lien prior to June 19, 1963. On that date, Long surrendered possession of the automobiles to plaintiff to hold as security for the sums loaned. It acquired a valid lien from the moment it took possession. Cases cited, *supra;* 15 AM. JUR. (2d) 309.

Plaintiff, having acquired a lien by taking possession of the chattels, is not now estopped to assert that lien against defendant. Plaintiff had neither actual nor constructive knowledge of the fact that Long was also borrowing from defendant. Plaintiff did nothing to prevent defendant from perfecting its lien. Had it transmitted the certificates to the Department of Motor Vehicles within ten days of the dates of the loans and mortgages, defendant would have the prior lien. The priority here declared results from defendant's negligence. Estoppel is not available to protect one against his own negligence. *Peek v. Trust Co.*, 242 N.C. 1, 86 S.E. 2d 745; *Hawkins v. Finance Corp.*, 238 N.C. 174, 77 S.E. 2d 669; *Ramsey v. Nebel*, 226 N.C. 590, 39 S.E. 2d 616; 31 C.J.S. 529.

We find no merit in defendant's contention that it should be adjudged the owner of the proceeds of the sale on the theory of marshalling of assets. It says plaintiff should call on Cobb, the limited partner, who has guaranteed payment; such payment would discharge plaintiff's lien,

leaving the fund subject to defendant's claim. This argument ignores the fact that Cobb, if required to pay, would be subrogated to all of plaintiff's rights, 83 C.J.S. 683, 24 AM. JUR. 955.

Affirmed.